UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES DANIEL MAYE,
     Petitioner,

v.                          CASE NO. 8:21-cv-02619-WFJ-AAS

UNITED STATES OF AMERICA,
     Respondent.

## UNITED STATES' RESPONSE IN OPPOSITION TO MAYE'S PETITION FOR WRIT OF ERROR *CORAM NOBIS*

Charles Daniel "CD" Maye, who has exhaustively litigated his convictions, once again attempts to invoke error *coram nobis*, which is a truly extraordinary, last chance writ for relief. Maye now wrongly attempts to leverage the Supreme Court's decision in *Van Buren v. United States*, 141 S. Ct. 1648 (2021), concerning the proper construction of the Computer Fraud and Abuse Act (the "CFAA"), to vacate all four of his convictions, including his convictions for conspiracy (Count One) and making a false statement to a federal agent (Count Five). As explained below, the *Van Buren* decision has no impact on Maye's convictions on Counts One and Five. Maye's petition for a writ of error *coram nobis* therefore should be summarily rejected without a hearing because Maye has not satisfied his high burden to articulate a present harm that merits this Court's invocation of such an extraordinary remedy.

## I. PROCEDURAL HISTORY

In December 2004, Maye, then a deputy with the Hillsborough County Sheriff's Office, and codefendant Leroy Collins were named in a five-count

Superseding Indictment. CR Dkt. 6.[1] The Grand Jury charged Maye with:

1. conspiracy to intentionally access a computer without authorization and in excess of authorization, to obtain information from a department or agency of the United States, for the purpose of private financial gain and in furtherance of criminal acts of extortion, in violation of the CFAA at 18 U.S.C. § 1030(a)(2)(B), and knowingly and willfully making materially false statements to an FBI agent, in violation of 18 U.S.C. § 1001(a)(2), all in violation of 18 U.S.C. § 371 (Count One);

2. intentionally accessing a computer—the NCIC (National Crime Information Center) computer database—without authorization and in excess of authorization, to obtain information from a department or agency of the United States, for the purpose of private financial gain and in furtherance of criminal acts of extortion, in violation of the CFAA at 18 U.S.C. § 1030(c)(2)(B) (Counts Two and Four); and

3. knowingly and willfully making false statements to a Special Agent of the FBI, in violation of 18 U.S.C. § 1001(a)(2) (Count Five).

*Id.* A jury found Maye guilty of all four charges against him. CR Dkt. 152. The court sentenced Maye to 97 months' imprisonment, 36 months' supervised release, and ordered him to pay a fine. CR Dkt. 166. Maye filed a notice of appeal, CR Dkt. 168, which he voluntarily dismissed, CR Dkt. 177. Maye was released from custody on September 10, 2013, and completed his supervised release on September 9, 2016.

Since 2007, Maye has repeatedly—*and unsuccessfully*—attacked his convictions and sentences. In that regard, Maye has filed multiple post-conviction motions and amended motions under 28 U.S.C. § 2255, an application for writ of habeus corpus

---

[1] References to the docket for this case will be cited as Dkt. ___. References to the criminal case docket, Case No. 8:04-cr-321-T-30EAJ, are denoted by CR Dkt. __. References to the dockets for Maye's extensive post-conviction cases will be cited as CV [case number] Dkt. ___.

under 28 U.S.C.§ 2241, and a previous petition for writ of error *coram nobis* under 28 U.S.C. § 1651(a). A summary detailing that procedural history is contained within the order entered by United States District Judge Virginia M. Hernandez Covington, denying Mayes's previous petition for writ of error *coram nobis*.[2]  *See Maye v. United States*, CV 17- 01314 Dkt. 19, included at Attachment A.

## II. PERTINENT FACTS OF THE CRIMINAL CASE[3]

Maye and Collins met and began an ongoing financial relationship in the early 1990s. Collins was a businessman who owned a mobile home park and would often assist law enforcement. Maye worked for Collins at the mobile home park as a manager, making repairs and collecting rent.

When the two men met, Collins was in a relationship with Linda Bobo. That relationship ended in 1996, and Bobo began a new relationship with James McLemore. Several months later, allegedly at Collins's request, Maye began to access the NCIC and Florida Crime Information Center (FCIC) databases to acquire restricted and private information about Bobo. Maye also pulled over Bobo's vehicle, gave her a warning for driving with a suspended license, and issued her a traffic

---

[2]  Mayes's various post-conviction actions, along with the most pertinent case filings, can be found at: CV 07-653 Dkts. 1, 4, 5; CV 07-1258 Dkts. 1, 3, 8, 14,24-26, 29, 31-33; CV 10-2327 Dkts. 1, 5, 7, 18–27, 33, 41, denied Eleventh Circuit at 12-14819, March 20, 2013, and at 14-14059, September 1, 2015; *Maye v. Haynes,* 2012 WL 3805776 (July 2, 2012), *cert. denied* 133 S. Ct. 981 (2013); CV 13-3104 Dkts. 1, 3, 5, 9; and CV 17- 01314 Dkts. 1, 13, 13-1, 18, 19, 23, 27, 29–33.

[3]  Unless otherwise noted, the United States' factual summary derives from an order denying Maye's 2007 section 2255, in which Judge Moody summarized the underlying facts of the criminal prosecution. CV 07-1258 Dkt. 25 at 3–6; *see also* Presentence Investigation Report ("PSR") dated July 18, 2006 ¶¶ 13–41 (more extensive facts listed therein). For this Court's convenience, Judge Moody's Order is included at Attachment B.

citation in a subsequent stop. Maye testified at trial that he accessed the databases as part of an ongoing investigation of Bobo's alleged drug dealing. Maye claimed that he asked Collins to get McLemore's tag number so that Maye could pass it along to the street crimes unit. Maye also testified that he never passed confidential information about Bobo to Collins.

Despite Maye's claimed discretion, Collins still found Bobo's address (which she had been concealing) and caused her home to be burglarized. Collins and his cohorts—Willie McCrary and "Little Willie"—claimed that Maye ran McLemore's tag for them after the three men spotted McLemore's vehicle in Bradenton. Maye provided Collins with McLemore's home address as well, and shortly thereafter Collins, McCrary, and "Little Willie" went to that address and spoke with McLemore's then-estranged wife.

In June 1996, Bobo and McLemore were returning to their home when McLemore was shot and wounded in a drive-by shooting. The shooter's vehicle was similar to one owned by Collins. Several days later, Collins called Bobo at the hospital where McLemore was being treated. Collins aggressively attempted to persuade Bobo to leave McLemore, but Bobo refused. Soon thereafter, Bobo and McLemore moved to a different address. Between June and September, Maye continued to access the NCIC and FCIC databases concerning Bobo. Specifically, Maye ran searches on Bobo on July 9, July 12, July 26, September 2, and September 3. Maye also requested Bobo's official Florida driving record.

4

In September, Collins had dinner with Bobo and threatened to harm McLemore if she refused to leave him. Bobo declined to do so. Collins told Bobo that "they'd get him to leave," and that "he'll go if I put enough fire up his ass." A few days later, Collins shot McLemore in the head, killing him.

Over the next two months, Collins and Maye attempted to locate Bobo. Collins and Bobo had a recorded conversation three days after the murder in which Collins continued to attempt to lure Bobo back into a relationship with him. He also claimed to have access to computer databases. Collins told McCrary that Maye was going to put Bobo in jail. Maye stopped Bobo again for driving with a suspended license and arrested her. Collins paid Bobo's bond and attempted to take her from jail, but Bobo refused to leave with him.

On November 24, a man threw an unidentified caustic substance into Bobo's face, blinding her.[4] At trial, the United States argued that Collins arranged for this tragedy to occur. It also argued that Maye made false and misleading statements to officials from the Florida Department of Law Enforcement and the Palmetto Police Department to cover up his involvement in the conspiracy.

---

[4] Additional trial testimony about conspirators Collins's and Maye's conduct involving Bobo can be found in the March 28, 2006, trial transcript: pages 26–28 (Collins retrieved car from Bobo); pages 33–37 (Maye twice stopped Bobo's car); pages 40-41 (Collins, accompanied by Bobo, drove to a meeting where Collins and Maye purportedly discussed "fixing" Bobo's ticket); pages 59–60 (Collins took Bobo to a motel, blocked motel room door, threatened Bobo, and had sex with her); pages 101–107 (Maye followed and stopped Bobo as she left church, examined her purse contents, Collins arrived at scene and spoke with Maye, after which Maye booked Bobo into Orient Road jail). A copy of the pertinent section of the March 28, 2006, trial transcript is attached as Attachment C.

The conspiracy did not end there. In July 1999, Maye also accessed the NCIC and FCIC databases to acquire restricted or private information about another of Collins's former lovers, Angeletta Hill Benavidez Williams. Maye, Collins, and Collins' son even went to Williams's home to help Collins take her truck. Several years later, in August 2003, Collins accosted yet another former lover, Veronica Smith. Collins attempted to force Smith to disclose her home address, but she refused. A few days later, Maye searched for Smith in the NCIC and FCIC databases to acquire restricted or private information. He attempted to justify the search by claiming that it was in conjunction with an ongoing investigation but there was no proof of any such investigation.[5]

The facts make clear that Maye was acting outside his authority as a deputy sheriff. The jury rejected Maye's defense and the courts have consistently rejected his challenges. Maye's latest petition for writ of error *coram nobis*—yet another attempt to re-write history—should be rejected.

## III. APPLICABLE LAW

*Coram nobis* is truly last chance relief. First, the United States must prove beyond a reasonable doubt a criminal defendant's culpability. Then the defendant

---

[5] Additional trial testimony about conspirators Collins's and Maye's conduct involving William and Smith can be found in the March 30, 2006, trial transcript: pages 41–45 (Collins, Maye, and others went to Williams's home in the early morning hours to retrieve Collins's truck, Maye threatened Williams that she would be arrested if she didn't "get [herself] in the house and keep [her] mouth closed"); page 47, line 6–11 (Collins told Williams he had her car tag run); pages 80–81 (Collins had Smith's vehicle taken from her apartment, explained to Smith that he, Collins, had Maye take it); pages 87–91 (Smith explained various interactions with Collins and Maye). A copy of the pertinent sections of the March 30, 2006, trial transcript is attached as Attachment D.

may directly appeal the conviction (and petition for a writ of certiorari regarding) his convictions. Appellate review is not a second bite at the apple: the defendant benefits from *de novo* scrutiny only for legal error, and, if he failed to preserve his issue in the district court, he bears a heavy evidentiary burden on attack. Once a defendant's conviction is final, he may collaterally attack that conviction under 28 U.S.C. § 2255, but only if in custody, and then only on a subset of legal errors that pose great constitutional harm—and he must excuse his procedural defaults on direct review and any preservation barriers. He must also establish that prior collateral challenge was not "adequate or effective." Each layer of subsequent review narrows the avenues for relief and includes new and significant procedural and substantive hurdles. A finally convicted defendant, who no longer suffers any restraint on his liberty, normally has no avenue to challenge a truly historical conviction. "The reason to bend the usual rules of finality" goes "missing when liberty is not at stake." *United States v. Keane*, 852 F.2d 199, 202–03 (7th Cir. 1988); *see Lane v. Williams*, 102 S. Ct. 1322, 1326–27 (1982). "Courts must conserve their scarce time to resolve the claims of those who have yet to receive their first decision." *Keane*, 852 F.2d at 203. Maye has exhausted each of the preceding avenues of potential relief and, where directed at the merits, lost every time.

The last potential gasp for a person who has served his sentence but still wishes to challenge his convictions is the writ for error *coram nobis*. The concept of an error *quae coram nobis resident*—the rather tautological process "that which remains in

our presence," *see Finkelstein v. Spitzer*, 455 F.3d 131, 133 (2d Cir. 2006)
(translating)—once allowed an English court of common law sitting during the
present term to correct a technical or clerical error in its judgment from the last term.
*See United States v. Mayer*, 35 S. Ct. 16, 19 (1914). Although the writ has been
abolished for civil cases, *see Blake v. State of Fla.*, 395 F.2d 758, 759 (5th Cir. 1968),[6] it
may still exist for criminal cases.

However, on collateral review the petitioner bears the burden of proof and
persuasion on each and every aspect of his claim, *Beeman v. United States*, 871 F.3d
1215, 1221–25 (11th Cir. 2017) (collecting cases), which is "a significantly higher
hurdle than would exist on direct appeal" under plain error review, *see United States v.
Frady*, 102 S. Ct. 1584, 1587 (1982). Accordingly, if this Court "cannot tell one way
or the other" whether the claim is valid, then the petitioner has failed to carry his
burden. *In re Moore*, 830 F.3d 1268, 1272–73 (11th Cir. 2016).

A *coram nobis* petitioner, who did not gain relief on direct appeal, collateral
challenge, or even through habeas corpus petition, must now squeeze through the
most narrow and heavy door of all before invoking this Court's authority to grant
relief. *United States v. George*, 676 F.3d 249, 258 (1st Cir. 2012) ("The further a case
progresses through the remedial steps available to a criminal defendant, the stiffer the
requirements for vacating a final judgment. … The writ of error coram nobis lies at

---

[6] Decisions issued by the former Fifth Circuit Court of Appeals before the close of business on
September 30, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d
1206, 1207 (11th Cir. 1981) (*en banc*).

the far end of this continuum."). The doorway is the most narrow because "courts may consider … petitions only where no other remedy is available and the petitioner presents sound reasons for failing to seek relief earlier." *United States v. Mills*, 221 F.3d 1201, 1203–04 (11th Cir. 2000); *see also Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) (*coram nobis* available only when there "is and was" no other avenue of relief). In other words, unless the petitioner establishes that he could not have raised his arguments while still suffering a deprivation of liberty, he cannot raise it now. *See, e.g., Jackson v. United States*, 375 F. App'x 958, 960 (11th Cir. 2010); *United States v. Spellissy*, 513 F. App'x 915, 916 (11th Cir. 2013); *see also United States v. Obasohan,* 318 F. App'x 798, 800 (11th Cir. 2009).[7]

The *coram nobis* door is heaviest because the petitioner must establish not only that the purported error in his long-closed criminal case was constitutional, but that it is truly "fundamental." *See United States v. Addonizio*, 99 S. Ct. 2235, 2237; *Moody v. United States*, 874 F.2d 1575, 1576-77 (11th Cir. 1989) (*coram nobis* jurisdiction only available for "matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid"); *Mills*, 221 F.3d at 1203–04; *see Alikhani*, 200 F.3d at 734; *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002); *see also United States v. Denedo*, 129 S. Ct. 2213, 2223–24 (2009). Maye's allegations fail this daunting test.

---

[7] Maye's petition indirectly raises, as if new, some arguments already raised in various other actions.

In addition, the Eleventh Circuit has stated that any truly fundamental defect that might merit *coram nobis* review must concern—as it did under the original understanding of *coram nobis*—an error "of fact," not law, that has "[never yet] been put in issue" and so lies outside the record that the court of judgment had before it. *See Alikhani*, 200 F.3d at 734; *Myles v. United States*, 170 F.2d 443, 444 (5th Cir. 1948); *see also United States v. Morgan*, 74 S. Ct. 247, 248–52 & n.4 (1954)[8] (describing original purpose of the writ and use in accordance with availability "at common law to correct errors of fact"); *Blake*, 395 F.2d at 758–59; *cf. Addonizio*, 99 S. Ct. at 2241 ("*coram nobis* jurisdiction has never encompassed all errors of fact").

Indeed, the *coram nobis* barriers are extremely difficult to overcome. The Eleventh Circuit in particular has "recognized that it is difficult to conceive of a situation in a federal criminal case today where coram nobis relief would be necessary or appropriate." *Roggio v. United States*, 597 F. App'x 1051, 1052 (11th Cir. 2015) (citations omitted). The United States has found a single instance in modern times here in the Eleventh Circuit.

In *Peter*, the Eleventh Circuit found that the defendant's information affirmatively charged, and his plea agreement specifically stated, that he had

---

[8] *Morgan*, on which modern *coram nobis* law relies, was decided under the original (1944) version of Fed. R. Crim. P. 35, which gave a district court jurisdiction to correct an "illegal sentence" at "any time." That rule has been amended to restrict post-conviction sentencing attack and today allows only for an attack on (1) technical defect within 14 days of the oral pronouncement of a sentence and (2) within certain periods based on substantial assistance. *See* Fed. R. Crim. P. 35, Advisory Committee Notes.

committed mail fraud by engaging in only a single type of conduct—making false representations in applications for municipal licenses. 310 F.3d at 711. After he completed his sentence, the Supreme Court held that mail fraud requires defrauding of "property" and that "municipal licenses … [are not] 'property.'" *See id.* Peter petitioned for a writ of *coram nobis*, which the district court denied. The Eleventh Circuit held that because, on the face of the information and plea agreement, Peter had been convicted based solely on conduct that was not a crime, the district court lacked section 3231 subject-matter jurisdiction over Peter's criminal case and *coram nobis* relief was appropriate. *Id.* at 712–15.[9]

Otherwise, neither the Eleventh Circuit nor the Supreme Court have suggested that any error other than the complete deprivation of counsel (a common exception to absolute rules against relief)—or a mistake of fact under which everyone labored during the case—could support a petition. *See* n.9 *supra*; *Myles*, 170 F.2d at 444 ("[T]he errors of fact capable of being corrected, which affect the validity of the legal proceeding, are of a very limited class. The errors to which such writ applies ordinarily are not errors of the judge but mistakes or oversights of the parties that vitiate the judgment."); *see also Mayer*, 35 S. Ct. at 18–19.

---

[9] The Court in *Peter* highlighted, however, the distinction between alleged error by "indictment omissions" and alleged error by "affirmative allegations of specific conduct that is not proscribed by the charging statute," because only the latter would potentially sap a criminal proceeding of validity and invite *coram nobis* relief. *See id.* at 713–15. Maye's case is no *Peter*. Unlike Peter, Maye's conduct as properly charged in Counts One and Five involved an array of criminal acts.

Thus, to pass through the *coram nobis* door, a petitioner must surmount many formidable threshold barriers, and this Court may still deny the petition unless it abuses its discretion, *see Alikhani*, 200 F.3d at 734. This is a truly demanding standard because the petitioner must hurdle, during the merits assessment of his petition, all barriers to relief that would have applied were he to have attacked the Court's judgment at any previous point. *See, e.g., Chaidez v. United States*, 133 S. Ct. 1103, 1113 (2013) (*coram nobis* unavailable due to *Teague* non-retroactivity); *Peter*, 310 F.3d at 712 (procedural default did not bar relief only because error was of subject-matter jurisdiction).[10] Moreover, "[o]ne of the requirements for coram nobis relief is that the petitioner show that the challenged conviction is 'causing a present harm' that is 'more than incidental.'" *United States v. Smith*, 644 F. App'x 927 (11th Cir. 2016), quoting *United States v. Sloan*, 505 F.3d 685, 697 (8th Cir. 2007). As explained below, Maye does not adequately identify any meaningful harm, much less present, non-incidental harm. In *Cline v. United States*, 453 F.2d 873, 874 (5th Cir. 1972), the district court denied a *coram nobis* petition without an evidentiary hearing, stating

---

[10] Because a federal court is powerless to act beyond its constitutional and statutory grant of subject matter jurisdiction, a court must zealously ensure that jurisdiction exists over a case, and the issue can be raised at any point in the litigation where a doubt about jurisdiction arises. *See Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). Maye's CFAA claims implicate subject-matter jurisdiction, so they are not procedurally barred. *See, e.g., Peter*, 310 F.3d at 712. But *Van Buren* does not permit Maye to paint jurisdictional deficiencies with an all-consuming brush. *Id.*; *cf. Beeman*, 871 F.3d at 1220 (timely claim challenging retroactively applicable Supreme Court decision does not open a door to otherwise untimely challenges). As explained below, Maye's conspiracy and false-statement convictions stand. Thus, considering Maye's extensive post-conviction litigation, challenges to the validity of those convictions are procedurally barred.

that, "before a petitioner may avail himself of coram nobis relief he must be able to show some present or prospective adverse effect from an unconstitutional conviction."

The requirement that a *coram nobis* petitioner show some continuing consequence of his conviction is a matter of common sense. Other courts considering this issue have determined that a petitioner must show some meaningful consequence of the historical conviction to invoke such an "extraordinary" writ that is fit, if at all, for only the most "compelling" of circumstances. *See George*, 676 F.3d at 253–54 (stating, "[i]n this circuit, … a coram nobis petitioner must … show that he continues to suffer significant collateral consequences from the judgment" and collecting cases "indicat[ing] that something more than the stain of conviction is needed to show" such consequences); *Howard v. United States*, 962 F.2d 651, 653 (7th Cir. 1992) ("[T]he petitioner must show that he or she is under a substantial legal disability in order to obtain a writ of error coram nobis."). "It is not enough to raise purely speculative harms." *United States v. Craig*, 907 F.2d 653, 658 (7th Cir.), *amended by* 919 F.2d 57 (1990).

## IV. DEFENDANT MAYE'S PETITION

Maye now petitions this Court to embrace a writ of error *coram nobis* to vacate all of his convictions for conspiracy (Count One), violations of the CFAA (Counts Two and Four), and making a false statement to a Special Agent of the FBI (Count Five), based upon the Supreme Court's decision in *Van Buren*. There, the Supreme

Court determined that the CFAA does not extend to an individual, such as Maye, who has an improper purpose for retrieving information from a computer system that is otherwise available to that individual. *Id*. at 1662. Rather, the CFAA covers those who access a computer system with authorization but then obtain information located in areas of the system that are off limits. *Id*.

Petitioner Maye's request spuriously cobbles the *Van Buren* decision to the Eleventh Circuit's decision in *Peter* to argue that this Court should vacate all of Maye's convictions. First, Maye submits wrongly the simple *ipse dixit* that, because under *Van Buren* Maye's conduct as charged in Counts Two and Four did not violate the CFAA, his other two convictions—for the two-object conspiracy charged in Count One and the false statement charged in Count Five—must necessarily be vacated. Dkt. 1 at 10–13. Second, building upon that faulty premise and looking to *Peter*, Maye asserts that his case presents a unicorn-like scenario which enables him to wriggle through that most narrow and heavy door and invoke the Court's authority to issue a writ of error *coram nobis*. As Maye sees it, the (erroneously) requested vacatur of all four of his convictions will alleviate any remaining collateral consequences arising from a criminal conviction. Maye is off base. His request for a writ of error *coram nobis* should be denied.

Notwithstanding, and certainly not definitive to the correct result here, the United States recognizes that, under *Van Buren*, the conduct charged against Maye in Counts Two and Four of his indictment did not violate the CFAA.

14

## V. ARGUMENT

### A. Maye fails to meet his burden to articulate a present harm that merits invocation of Court's authority to issue a writ of error *coram nobis*.

To properly avail himself of *coram nobis* relief, Maye must demonstrate that his convictions are causing a continuing or prospective consequential harm. *See Smith*, 644 F.App'x at 927; *Cline*, 453 F.2d at 874. Indeed, given all the recognized barriers when a defendant seeks to vacate a conviction via a writ of error *coram nobis*, red flags accompany such a request. *George*, 676 F.3d at 258. As the Eleventh Circuit aptly noted, given "the availability of habeas review, … it is difficult to conceive of a situation in a federal criminal case today where *coram nobis* relief would be necessary or appropriate." *Roggio*, 597 F.App'x at *1052 (internal quotation marks omitted) (citing *Lowery v. United States*, 956 F.2d 227–29 (11th Cir. 1992) (per curiam)).

Maye's only attempt to satisfy his heavy burden to demonstrate a continuing present harm is tucked into a footnote, Dkt. 1 at fn.1, which lists some of the expected consequences of a federal criminal conviction. *Id*. As explained above, however, the United States is only aware of a single instance in modern times when the Eleventh Circuit, after cautioning against routine grants of *coram nobis* relief, sanctioned such relief. There, in *Peter*, the Eleventh Circuit was faced with a dissimilar scenario in which a defendant had pleaded guilty to a *one-count superseding information* that charged the defendant with *committing one act that did not constitute a crime*. *Peter*, 310 F.3d at 711–12.

Maye, however, stands convicted of four counts, two of which—Count One

15

(conspiracy) and Count Five (false statements)—charged some additional conduct distinct from the CFAA violations discussed in *Van Buren*. Thus, even if Maye's convictions on Counts Two and Four were somehow erased but either Count One or Count Five remained, Maye would maintain his status as a convicted felon, and he has not offered any explanation as to how vacating only a subset of his convictions would alleviate any continuing consequential harm. As explained below, Count One and Count Five are unaffected by the Supreme Court's decision in *Van Buren*. Maye has not satisfied (and cannot satisfy) his burden to articulate a present harm that merits this Court's invocation of its authority to issue a writ of error *coram nobis*. *Coram nobis* relief is therefore unavailable to him.

### B. Maye's conviction on Count One is unaffected by *Van Buren*.

Maye was charged in Count One for his role in a two-object conspiracy. As explained by the trial court:

> Count One charge[d] that the defendants knowingly and willfully conspired to intentionally access a computer without authorization and in excess of authorization and thereby obtained information from any department or agency of the United States [the CFAA object], for the purpose of financial gain and in furtherance of criminal and tortious acts, in this case, extortion <u>and</u> to make materially false and fictitious statements in a matter within the jurisdiction of the executive branch of the government of the United States [the false statement object].

CR Dkt. 147 at 7 (emphasis in original). At trial, Maye was convicted of the conspiracy charged in Count One. CR Dkts. 6 and 152.

The vacatur of one object of a two-object conspiracy need not result in the vacatur of a defendant's conspiracy conviction. *See, e.g., United States v. Medina,* 485 F.3d 1291, 1301

(11th Cir. 2007) ("This Court has long held that where there is a conviction for a multi-object conspiracy, the evidence must only be sufficient to sustain a conviction for any one of the charged objectives."); *United States v. Ross,* 131 F.3d 970, 984 (11th Cir. 1997) ("A guilty verdict in a multi-object conspiracy will be upheld if the evidence is sufficient to support a conviction of any of the alleged objects.").

As explained above, on collateral review, the defendant bears the burden of proof and persuasion on each and every aspect of his claim.[11] *Beeman*, 871 F.3d at 1221–25. In this regard, the defendant faces "a significantly higher hurdle than would exist on direct appeal." *Frady*, 102 S. Ct. at 1587. Mayes's petition mentions the two-object conspiracy charged in Count One only once, in the Introduction section, Dkt. 1 at 2, when generally acknowledging that Maye had been convicted of the conspiracy. Maye then leaves it to others to clear his significantly high burden to explain how the *Van Buren* decision fatally impacts Maye's conspiracy conviction and thereby merits the extraordinary relief requested.

This is likely because Maye cannot offer any persuasive evidence or argument to refute what was proven at trial, namely that Maye actively conspired to violate the false-statement object of the charged conspiracy, a conspiracy that involved (in addition to the alleged CFAA object) threats and extortion and unimaginable acts of violence and lies told by Maye to a Special Agent about his role in that criminal conduct. *Van Buren* does not erase away all of Maye's criminal liability. Regardless of *Van Buren*, Maye's conspiracy conviction on Count One will remain intact, making unnecessary any further consideration of his petition for *coram nobis* relief.

---

[11] A request for *coram nobis* relief should be treated as "similar in character to a request under 28 U.S.C. § 2255." *United States v. Hedman*, 655 F.2d 813, 817 (7th Cir. 1981).

**C. Maye's conviction on Count Five is unaffected by *Van Buren*.**

Maye was also convicted on Count Five with knowingly and willfully making

materially false and fraudulent statements in April 2004 during an interview with a

Special Agent of the FBI, in connection with the then-ongoing federal criminal

investigation. CR Dkt. 6. Count Five identified four representations made by Maye

to the Special Agent in which Maye was untruthful: (i) in reference to Maye's 1996

arrest of Bobo, conspirator Collins did not have Maye wait at a location for Bobo; (ii)

conspirator Collins never asked Maye to "find out any intelligence," and that Maye

told Collins Maye would not do so; (iii) in reference to Maye accessing information

in the NCIC database regarding Veronica Smith, he may have "run her to see if she

was wanted;" and (iv) in reference to Maye accessing information in the NCIC

database regarding Linda Bobo, Maye was trying to determine if Bobo was licensed

to drive but that Maye did not "run her" to find Bobo for Collins. *Id.*

Maye's petition once again falls well short of surmounting his burden of proof

and persuasion that Count Five must be vacated. Rather, Maye asserts, *without any*

*evidence*, that "there is no dispute that the only statute at issue" in the investigation

was a potential violation of the CFAA. Dkt. 1 at 9. Based upon that wholly

unsupported claim, Maye then wrongly attacks the FBI's jurisdiction to investigate

the underlying criminal conduct and raises a materiality argument.

A consideration of the above pertinent case facts reveals the absurdity of

Maye's claims. That the FBI in an investigation concerning the above egregious

conduct would unnecessarily circumscribe its investigation to focus only upon a potential CFAA violation defies logic and common experience. Indeed, it is more often than not that, in an investigation concerning a mixed stew of criminal conduct—murder, attempted murder, extortion, and civil rights violations, among others—spanning (eight) years, a collection of potential federal crimes is properly considered and investigated prior to finally arriving at those selected to charge by indictment. And, making false statements to a federal agent about the core conduct under investigation, is certainly material and a violation of 18 U.S.C. § 1001. *See, e.g.*, *United States v. Clay*, 832 F.3d 1259, 1305–09 (11th Cir. 2016); *United States v. Henderson*, 893 F.3d 1338, 1350–51 (11th Cir. 2018). The broad sweep of crimes investigated is captured, in part, in the manner and means section detailed in Count One, paragraph ten, which explains that conspirators—Collins and Maye—engaged in the criminal conduct to facilitate Collins's efforts "to extort, threaten and commit acts of violence against other persons to force and compel them to act against their will." CR Dkt. 6 at ¶10 (1) and (2).

As noted above, trial testimony established that conspirators Collins and Maye utilized law enforcement information and resources to assist Collins in locating and threatening Bobo, Williams, Smith, and others to bend their conduct to Collins's desires, and that conspirators Collins and Maye did so by taking or threatening to take money, property, and/or liberty from the women. Given the wide-ranging conduct at issue, it would therefore be expected that the related federal investigation

19

would have concerned, among other potential federal law violations, extortion (in violation of 18 U.S.C. § 1951),[12] and deprivation of rights under color of law and conspiracy to do so (in violation of 18 U.S.C. §§ 242 and 241, respectively).[13]

Regardless, here, it is not necessary for the United States to identify the various federal crimes under investigation. It is Maye who bears the high burden of proof and persuasion on each and every aspect of his claims, *see Beeman*, 871 F.3d at 1221–25, and he has offered nothing of substance to support his contention that his conviction for making a false statement to a Special Agent of the FBI should be vacated. As a result, that conviction will also remain, making unnecessary any further consideration of Mayes's petition for *coram nobis* relief.

## VI. CONCLUSION

Mayes's convictions on Counts One and Five are unaffected by *Van Buren*, and Maye has failed to meet his burden to articulate a present harm that merits invocation of the Court's authority to issue the requested relief. His petition should be denied without a hearing.

---

[12] The 2003 Eleventh Circuit Pattern Jury Instructions identified three elements associated with a violation of 18 U.S.C. § 1951(a), "Color of Official Right": "(1) That the Defendant induced the person described in the indictment to part with property; (2) That the Defendant did so knowingly and willfully by means of 'extortion,' as hereafter defined; and (3) That the extortionate transaction delayed, interrupted or affected commerce."

[13] The 2003 Eleventh Circuit Pattern Jury Instructions identified three elements associated with a violation of 18 U.S.C. § 242: "(1) That the Defendant committed the act of [describe the right of which the victim was deprived, e.g. deprivation of liberty without due process of law] as charged in the indictment; (2) That in so doing the Defendant acted or purported to act under color of state law; and (3) That in so doing the Defendant willfully exceed and misused or abused the Defendant's authority under state law."

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney


By:      */s/Jay G. Trezevant*
         Jay G. Trezevant
         Assistant United States Attorney
         Fla. Bar No.: 0802093
         400 N. Tampa Street, Suite 3200
         Tampa, Florida 33602-4798
         Telephone:   (813) 274-6000
         Facsimile:    (813) 274-6358
         E-mail: jay.trezevant@usdoj.gov

**Charles Daniel Maye v. U.S.**          **Case No. 8:21-cv-02619-WFJ-AAS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2022, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a

notice of electronic filing to the following:

William Mallory Kent, Esq.


By:      */s/Jay G. Trezevant*
Jay G. Trezevant
Assistant United States Attorney

22